UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID CHARLES JACKSON,<br>*Petitioner*,<br>v.<br>UNITED STATES OF AMERICA,<br>*Respondent*. | Civil No. 3:21cv349 (JBA)<br><br>September 1, 2023 |

**RULING ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE, MOTION FOR PRESERVATION OF EVIDENCE, AND MOTION TO COMPEL**

Petitioner David Jackson moves *pro se* [Doc. # 1] asking the Court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner also filed a Motion for Preservation of Evidence [Doc. # 6] and a Motion to Compel [Doc. # 14]. For the reasons that follow, Petitioner's § 2255 Petition, Motion for Preservation of Evidence and Motion to Compel are denied.

### I.      Background

Petitioner David Jackson was convicted by a jury of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and nine counts of wire fraud, in violation of 18 U.S.C. § 1343. (Jury Verdict [Crim. Doc. # 154][1] at 1-3.) On February 8, 2016, he was sentenced to 205 months imprisonment and three years supervised release. (Judgment [Crim. Doc. # 198] at 1.) He was also ordered to pay restitution of $4,513,075. (*Id*.) His conviction and sentence were affirmed by the Second Circuit on October 25, 2019. *United States v. Jackson*, 792 Fed. App'x 849, 852-53 (2d Cir. 2019).

### II.     Relevant Facts

---

[1] Citations to the docket in Petitioner's underlying criminal case, *USA v. Jackson et al.*, 2:14cr250 (JBA), will be labeled as "[Crim. Doc. #]." Citations to the docket in this matter, *Jackson v. USA*, 3:21cv349 (JBA), will be labeled as "[Doc. #]."

1

### A. Petitioner's Disputes with his Trial Defense Counsel

In August 2015, just two weeks before the commencement of trial, Petitioner moved for substitution of counsel. (Order Denying Mot. to Subst. Counsel [Crim. Doc. # 107] at 1-2.) This followed his previously granted motion to substitute counsel due to an "irretrievable breakdown" with his prior counsel in January 2015. (*Id.* at 1.) In denying his August 2015 motion, the Court observed his arguments were belied by "the shifting nature of [Petitioner's] claims against Mr. Duby." (*Id.* at 3.) The Court held that none of Petitioner's arguments, which focused on Attorney Christopher Duby's alleged failure to contact certain witnesses and his alleged misrepresentation of the facts of the case to a particular witness, "demonstrated either the good cause or unusual circumstances required to again substitute counsel." (*Id.*) The Court concluded that it had "seen no evidence or testimony that persuades it that Mr. Duby ha[d] done anything other than prepare assiduously to zealously represent his client at trial[.]" (*Id.* at 4.) This ruling was affirmed by the Second Circuit. *Jackson*, 792 Fed. App'x at 852-53. At trial, Mr. Duby's continued active representation of his client included cross-examination of witnesses, a defense that included Petitioner's testimony, a motion to preclude evidence of Petitioner's prior conviction [Crim. Doc. # 70], and post-trial motions for acquittal [Crim. Doc. # 163] and a new trial [Crim. Doc. # 166].

### B. Evidence at Trial

Extensive evidence of Petitioner's guilt was presented at trial. Petitioner's motion for acquittal was denied, with the Court reflecting on the "ample evidence" presented to convict him. (Ruling on Defs.' Post-Trial Mots. [Crim. Doc. # 178] at 5.) While Petitioner conceded that "the Government established that [he] made some misrepresentations that may have amounted to deceit," he insisted that the Government offered "no direct evidence" of intent. (Mot. for Acquittal at 4.) As the Court instructed the jury, intent can be established from circumstantial evidence. (Ruling on Defs.' Post-Trial Mots. at 5, citing

*United States v. Cuoto*, 383 F. App'x 30, 33 (2d Cir. 2010).) The Court parsed the significant trial evidence, including Petitioner's own testimony, from which the jury could have inferred Petitioner's guilt, as follows:

> The jury heard testimony from ten individuals who had paid Mr. Jackson sums of money ranging from $35,000 to $100,000, in addition to up to $1 million in escrow, to secure funding for various ventures. Mr. Jackson represented to every one of these individuals that if they did not receive their funding, they would be entitled to a full refund, and that no money would leave the escrow account without their explicit consent. (*See, e.g.*, Jackson Testimony, Ex. 1 to Gov't's Opp'n [Crim. Doc. # 174] at 66–67, 73–74.) Notwithstanding those representations, only one of the victims received so much as a partial refund, though none of the victims received their funding. (*See id.* at 71.) Further, individuals who never agreed to the release of their escrow funds testified that the funds were nonetheless released to others. The Government presented evidence to show that at least some of the released escrow funds were placed directly into an American Capital Holdings' account and used for Mr. Jackson's personal expenses.
> 
> The Government also submitted evidence that Mr. Jackson had made other misrepresentations to the victims to induce them to do business with him, and many victims stated that they would not have done business with Mr. Jackson had they known the truth about these misrepresentations. Several victims testified that Mr. Jackson had told them that he had successfully made "many" loans in the past. Michael Healy, for example, testified that Mr. Jackson had stated to him that he "did a loan every month in the amount of $100 million." Dale McClean testified that Mr. Jackson represented to him that he had "closed tens of deals for millions of dollars." Valerie Hill-Rawls likewise testified that Mr. Jackson had told her that he had successfully closed loans in the past, and Mitchell Koep stated that Mr. Jackson had represented to him that he had closed millions of dollars of loans. In fact, as Mr. Jackson admitted at trial, he had never successfully funded a loan.
> 
> The Government additionally offered evidence that Mr. Jackson had provided prospective clients with a reference from co-conspirator Mariame Robinson-Cowan. The evidence showed, and Ms. Robinson-Cowan testified, that Mr. Jackson paid her to tell prospective clients that she had obtained large loans from Mr. Jackson although this was not true. Indeed, Mr. Jackson himself testified that Ms. Robinson-Cowan's statements to prospective clients "might have been an exaggeration" and that in fact, he had never closed "one of these loans." (*Id*. at 73, 74.)
> 
> Finally, Mr. Jackson admitted that he used several aliases in his business dealings, alternatively calling himself C. David Mann, Andrew Smithson, and Charles Jackson. Mr. Jackson testified that he used these names for "profiling" his company, i.e., making it seem bigger than it was. The jury, however, could reasonably have drawn a different conclusion from Mr.

> Jackson's use of aliases—namely, that he did not want prospective clients to know about his criminal record. Indeed, Kelly Thoma testified that after googling "Smithson" and "American Capital Holdings," she had learned that "Charles Jackson" had been to jail. She asked "Mr. Smithson" if "Charles Jackson" was still involved in the business, and he emphatically assured her that "Charles Jackson" was no longer affiliated with the business and was in jail "where he belonged."

(Ruling on Defs.' Post-Trial Mots. at 5-7.)

### III.    Section 2255 Motion

In his § 2255 motion, Petitioner raises 43 grounds for challenging his sentence.[2] (Pet'r Mot. at 5-11.) These grounds can be divided into four categories: 1) ineffective assistance of trial counsel; 2) ineffective assistance of appellate counsel; 3) prosecutorial misconduct; 4) abuse of discretion by the Court during trial.

Grounds for § 2255 relief are limited; "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Typically, "relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir.1989).[3] Furthermore, a constitutional error can only be addressed through a § 2255 petition if it had a "substantial and injurious effect," resulting in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993). Although the Second Circuit "takes a dim view of any summary rejection of a petition for postconviction relief when supported by a sufficient affidavit," where a §

---

[2] Petitioner's memorandum supports only 26 grounds. (Pet'r Mem. [Doc. # 8] at 3-48.) Respondent urges the Court to deem the other grounds that appear only in Petitioner's initial habeas motion, filed roughly five months prior to his memorandum of law, to be abandoned. (Resp't Resp. [ Doc. # 11] at 45 n.13, 15-19; 49 n.20; 50 n.21; 55; 57.) However, in light of the Court's duty to review *pro se* habeas petitions "with a lenient eye," *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983), the Court will consider them all to have remained in play.
[3] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

2255 petition is supported only by "[m]ere generalities or hearsay statements," a court may dismiss a § 2255 petition without a hearing. *Dalli v. United States*, 491 F.2d 758, 760-61 (2d Cir. 1974). Moreover, if "the facts alleged by petitioner, even if credited, would not entitle him to habeas relief, the motion should be denied." *United States v. Moore*, 174 F. App'x 603, 604 (2d Cir. 2006). "A district judge considering a section 2255 motion can rely on [her] personal familiarity with the case and dismiss the habeas claim without a hearing if [she] finds that the petition lacks any truly meritorious allegation and there is overwhelming evidence of petitioner's guilt." *Jones v. United States*, No. 3:19-CV-01305 (MPS), 2021 WL 311279, at *8 (D. Conn. Jan. 29, 2021) (*quoting United States v. Seiser*, 112 F.3d 507 (2d Cir. 1996).) Because Plaintiff does not make specific factual allegations, beyond generalities, which could give rise to habeas relief, no hearing is warranted on this motion.

### A. Ineffective Assistance Counsel

"A habeas petitioner claiming ineffective assistance bears a heavy burden." *Illarramendi v. United States*, No. 3:16-CV-1853 (SRU), 2020 WL 656698, at *8 (D. Conn. Feb. 11, 2020). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland v. Washington*, 466 U.S. 668, 689 (1984), and courts have "declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox, or downright ill-advised." *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). Under the *Strickland* test, a petitioner "must show (1) that counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms, and (2) that there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceeding would have been different." *Moore*, 174 F. App'x at 604.

The *Strickland* test is also applicable to appellate counsel. *Smith v. Murray*, 477 U.S. 527, 535-536 (1986). A defendant "has no constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional

5

judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Nor does *Strickland* require appellate counsel to raise "untenable" arguments on appeal. *Rogovich v. Ryan,* 694 F.3d 1094, 1106 (9th Cir. 2012). As with the decisions of trial counsel, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d. Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). Since there are "countless ways to provide effective assistance in any given case," "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 689-91. "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

### 1. Trial Counsel
#### a. Alleged Failures to Investigate

Petitioner alleges his trial counsel failed to properly investigate the facts of the case, as follows:

- Ground 1: Failure to Request Jencks Records[4]
- Ground 2: Failure to Investigate Bank Guarantees.
- Ground 3: Failure to Subpoena a Fact Witness.
- Ground 4: Failure to Investigate Mitigating Facts.
- Ground 11: Failure to Investigate the loss amount with regard to sentencing.[5]
- Ground 12: Failure to Deliver PSR to Petitioner and Investigate the Facts Underlying PSR.[6]

---

[4] This ground is unavailing, as Petitioner's briefing suggests he is not actually aware of what documents were in his trial counsel's possession and is merely assuming without substantiation that certain materials were not turned over by the Government. *See infra* Section III(B)(2).

[5] Petitioner's loss amount arguments are unavailing. *See infra* Section III(A)(2).

[6] This issue was already discussed at Petitioner's sentencing, and this Court was satisfied that Mr. Duby had conveyed the relevant details of the PSR to Defendant prior to

- Ground 18: Failure to subpoena an expert witness.

(Pet'r' Mem. at 3.)

Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. *See also Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995) ("While the Sixth Amendment requires an attorney to look for evidence that corroborates the defense he pursues, the Sixth Amendment has not been expanded to require an attorney to hunt down [] marginally relevant and indirectly beneficial evidence."). Ineffective assistance of counsel claims "must be considered in light of the strength of the government's case." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *opinion amended on denial of reh'g*, 253 F.3d 1150 (9th Cir. 2001). "When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery he or she now claims was necessary, an ineffective assistance claim fails." *Id*. Similarly, when there is "no evidence" that a witness "would have provided helpful testimony for the defense," ineffective assistance of counsel claims will also fail. *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000).

Petitioner fails to show that any of his asserted grounds satisfy the test under *Strickland*. He points to nothing showing that trial counsel's investigation of the facts was unreasonable, or that certain facts, if investigated, would have altered the outcome of the trial. As the Government points out as to Ground 2, Petitioner's admission that he never funded a loan demonstrates that, regardless of the legitimacy of the bank guarantees, he

---

sentencing. (Sentencing Tr. [Crim. Doc. #273] 3:14-12:18.) While Plaintiff objected that Mr. Duby had not read aloud to him the entire PSR, Mr. Duby explained that the sections he did not read to Petitioner were just personal history sections Petitioner had already reviewed in a prior PSR in a separate case. (*Id.* at 6:2-21.) Petitioner conceded that Mr. Duby read to him the portions of the PSR that were relevant to the specifics of this case. (*Id.* at 6:13-21.) The Court explained to Petitioner that sentencing would proceed "[b]ecause I think that you have had the salient Presentence Report conveyed to you, which you say you understood." (*Id.* at 12:10-13.)

defrauded his victims. As to Grounds 3 and 18, Petitioner fails to substantiate his speculation as to what a potential witness would have testified to, much less how such testimony (which Petitioner asserts would have gone to the origins of bank guarantee documents) would have exonerated him.[7] (Pet'r Mem. at 6-8, 23-24.) As to Ground 4, there is no basis offered from which to conclude that trial counsel did not properly investigate the tax issue, or that his investigation would have had any change on the trial's outcome given the overwhelming evidence of Petitioner's guilt.

### b. Alleged Improper Strategic Choices

Petitioner challenges 17 strategic choices of his counsel as follows:

- Ground 5: Failure to cross-examine IRS custodian of records.
- Ground 6: Claimed "conflict of interest."
- Ground 7: Failure to introduce exculpatory evidence.
- Ground 8: Eliciting incriminating testimony from Petitioner on the stand regarding Plaintiff's prior conviction.[8]
- Ground 9: Failure to request a lesser included offense.[9]
- Ground 10: Failure to object to jury instructions.[10]
- Ground 13: Decision to advise Petitioner not to allocute at sentencing.[11]
- Ground 14: Failure to question prospective jurors re: prior conviction.
- Ground 15: Failure to object during Government witness (FBI Agent) and use of recorded interview.
- Ground 16: Failure to object to case agent sitting at the Government's table.
- Ground 17: Failure to challenge restitution.[12]

---

[7] Individuals Plaintiff asserts should have been called as witnesses include Chennel Johnson, Charles Marsh, and a "Mr. Dalaly." (Pet'r Mem. at 6-8.)
[8] The Court previously denied [Crim. Doc. # 88] Petitioner's motion in limine [Crim. Doc. # 70] to preclude evidence of his prior conviction. Moreover, Petitioner himself testified at trial and thus opened the door to his prior conviction under Federal Rule of Evidence 609.
[9] Petitioner does not explain what sort of lesser included offense there would be.
[10] Even if Petitioner could establish an improper jury instruction, the weight of the evidence against him means that he could not show that an erroneous instruction "had a substantial or injurious effect or influence in determining the verdict." *Green v. Attorney General New Jersey*, 841 Fed. App'x 420, 425 (3d. Cir. 2021).
[11] Defendant's allegation that he was advised not to speak at sentencing does not show ineffective assistance of counsel. In addition, the Court clearly advised the Defendant that he was invited to speak at his sentencing. (Sentencing Tr. at 46:15-47:10.)
[12] Petitioner's restitution arguments are unavailing. *See infra* Section III(A)(2).

- Ground 19: Failure to object to an out of court statement.
- Ground 20: Failure to object to lay witness discussing bank instruments.[13]
- Ground 21: Failure to object to prosecutorial misconduct.[14]
- Ground 22: Failure to object to multiplicitous indictment counts for Counts 7, 8, and 9.[15]
- Ground 23: Failure to object to redaction of overt act.[16]
- Ground 24: Failure to move for a mistrial.[17]

(Pet'r' Mem. at 3-4, Pet'r' Mot. at 8-11.)

All of these grounds criticize counsel's strategic choices, which are "virtually unchallengeable," particularly where, as here, there was overwhelming evidence of Petitioner's guilt, meaning that it was highly unlikely that, even if trial counsel had chosen different tactics, there would have been any difference in the outcome. For example, as to Ground 5, there is nothing offered that suggests that a cross-examination of the IRS records custodian would have had any impact on the jury's verdict. Similarly, isolated failures to

---

[13] Petitioner fails to show how this testimony was significant enough to be prejudicial, given the overwhelming weight of the remaining evidence at trial.

[14] Petitioner does not establish the existence of prosecutorial misconduct. *See infra* Section III(B)(2).

[15] Petitioner fails to show how Counts 7, 8, 9, which relate to fraudulent communications occurring on three distinct dates, constitute charging a single offense in more than one count for wire fraud.

[16] It is not shown how this redaction was prejudicial to Petitioner.

[17] Plaintiff argues trial counsel should have moved for a mistrial after an incident where a juror spoke to a Government agent during the trial. (Pet'r Mem. at 27.) Petitioner maintains that while the Court dismissed that juror in question, his trial counsel was deficient in not moving for a mistrial. However, the facts alleged do not show this Court abused its discretion in dismissing the juror but not calling for a mistrial, and so cannot give rise to a claim for ineffective assistance of counsel. *See Castellano v. United States*, 795 F. Supp. 2d 272, 280-81 (S.D.N.Y. 2011) (finding no ineffective assistance of counsel where petitioner challenged failure of trial counsel to move for a mistrial after the Court dismissed two members of the jury for bias in the midst of jury deliberations); *see also United States v. McGriff*, 287 F. App'x 916, 917 (2d Cir. 2008) (finding district court did not abuse its discretion in choosing to dismiss two jurors who were frightened after recognizing people in the courtroom, but allowing the remaining jurors to continue deliberations).

object are not shown to render counsel's assistance ineffective in the overall context of trial evidence. Ground 6 is based on an argument already rejected by both the District Court and the Second Circuit. *See Jackson*, 792 Fed. App'x at 852-53. Petitioner's litany of disagreements with the decisions of his counsel fail to establish a meritorious claim for ineffective assistance of counsel, particularly where, as here, the weight of evidence against him was overwhelming, such that a minor strategic misstep by his counsel cannot be shown to have prejudiced the outcome of the trial.

### 2. Appellate Counsel

Petitioner argues that appellate counsel was ineffective because of failure to raise the issues of trial counsel's ineffectiveness and a claim of invalidity of the restitution order on appeal. (Pet'r Mot. at 11; Pet'r Mem. at 42-43; Pet'r Reply [Doc. # 12] at 11.)

Petitioner's major contention is that he instructed appellate counsel to pursue issues that appellate counsel did not raise. The failure to pursue every possible argument does not rise to the level of constitutionally ineffective counsel. *See Jones*, 463 U.S. at 751 (explaining that the Sixth Amendment does not require appellate counsel to present every nonfrivolous argument). Counsel may, "as a matter of professional judgment," decide to not present certain points for appeal. *Id.*

Petitioner does not show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo*, 13 F.3d at 533. Given the Second Circuit's "baseline aversion to resolving ineffectiveness claims on direct review," *United States v. Salameh*, 152 F.3d 88, 161 (2d Cir. 1998), it is far from obvious that Petitioner's ineffective assistance of trial counsel claim should have been raised on appeal.

The issue of restitution was likewise not an obvious target for appeal. Petitioner's disputes with this Court's restitution award are clearly untenable. *See Rogovich,* 694 F.3d at 1106 (explaining that *Strickland* does not require appellate counsel to raise clearly "untenable" issues on appeal). Petitioner contends that the Court erred in finding him jointly

10

and severally liable with his codefendants, including losses that neither he nor other witnesses testified to, and not considering his ability to pay. (Pet'r Mot. at 11; Pet'r Mem. at 42-43.) But Petitioner was a member of a conspiracy, thus joint and several liability is applicable. *See. Jackson*, 792 Fed. App'x at 855 (explaining with respect to Mr. Jackson's co-defendant that a member of a conspiracy is jointly and severally liable for losses caused by the conspiracy). Petitioner's argument regarding the loss amount is likewise without merit. *See* 18 U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."). Finally, the precedent Petitioner cites to support his argument that the Court did not adequately consider his ability to pay (Pet'r Mem. at 43; Pet'r Reply at 11) has been superseded. *See United States v. Walker*, 353 F.3d 130, 131-32, 134 (2d Cir. 2003) (explaining that because of the courts' reduced discretion in determining restitution amounts following the passage of the Mandatory Victims Restitution Act, courts have no "obligation . . . to announce their consideration of the required factors.").

### B. Prosecutorial Misconduct

Petitioner sets out 12 grounds of claimed prosecutorial misconduct:

- Ground 1: Abuse of preemptory challenge.
- Ground 2: Failure to authenticate evidence.
- Ground 3-9: Failure to disclose exculpatory evidence.
- Ground 10: Improper summation.
- Ground 11: Confrontation clause violation.
- Ground 12: Suborning perjury.

(Pet'r Mem. at 4-5.)

#### 1. Procedural Default

Respondent argues that Petitioner has procedurally defaulted on these claims by failing to raise them in his direct appeal. (Resp't Resp. at 50.) "In general, a claim[, with the exception of ineffective assistance of counsel claims,] may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007). "If such a claim has not been presented on direct review, the procedural default bar may be overcome only where the petitioner establishes either (1) cause for the failure to bring a direct appeal and actual prejudice from the alleged violations; or (2) actual innocence." *Id.* Thus, "a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim." *Reed v. Farley*, 512 U.S. 339, 358 (1994).

In response, Petitioner argues that cause is shown by the ineffective assistance of his appellate counsel. (Pet'r Reply at 11.) However, ineffective assistance of counsel can only form the basis for a showing of cause if counsel is so deficient that they are constitutionally ineffective under the *Strickland* test. *Murray v. Carrier,* 477 U.S. 478, 487-88 (1986). Therefore, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 88. Because the Court finds that Petitioner's ineffective assistance of counsel claims fail, it necessarily also finds that Plaintiff has not shown cause for his procedural default, and his claims for prosecutorial misconduct are improperly asserted in his petition.

### 2. Merits

Even absent procedural default, there is no merit to Petitioner's claims of prosecutorial misconduct which, to reverse a conviction, must "cause[] the defendant substantial prejudice, by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999).

Petitioner alleges that Respondent failed to properly authenticate bank guarantee exhibits, but Petitioner cannot show that absent the admission of the bank guarantees, "taken in the context of the entire trial," Petitioner "would not have been convicted." *United States v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002).

The strength of the Government's case also weighs against finding that Petitioner was substantially prejudiced by the reference to Petitioner's prior conviction and the personal beliefs expressed in the Government's summation. (Pet'r Mot. at 9; Pet'r Mem. at 37-38.) During closing, the prosecutor rhetorically asked the jury "[d]o you think it would have made a difference to [the victims] if they had known that Mr. Jackson had been convicted of bank fraud, including the creation of false documents? And I submit the answer is self-evident." (9/29/2015 Trial Tr. [Crim. Doc. # 233] at 2405-06.) Even if the Court were to find that the remark was improper, it was not emblematic of "a proceeding dominated by passion and prejudice." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981).[18]

In his allegation that the Government suborned perjury, Petitioner asserts that certain victims lied during their testimony (Pet'r Mot. 1 at 18; Pet'r Mem. 8 at 41-44), but such general allegations do not suffice to demonstrate suborning of perjury by the Government. Similarly, Petitioner alleges a confrontation clause violation, claiming that he did not receive any discovery on the statement by an (unspecified) government witness, and thus was denied the right to confront that witness. (Pet'r. Mot. at 9).[19] Plaintiff does not

---

[18] "Often, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *Modica*, 663 F.2d at 1181.

[19] In his reply brief, Plaintiff asserts that the Government withheld details of a report of a witness (Professor Byrne) that it listed as an expert witness. (Pet'r Reply at 10.) It is not clear if this is the confrontation clause issue Plaintiff referenced in his initial motion, but lacking more detail, the Court cannot find that a confrontation clause violation occurred or that such a potential violation substantially prejudiced Petitioner. Nor does Petitioner allege facts substantiating his assertion that trial counsel was ineffective for not requesting

13

expand on Ground 11 in either his memorandum of law or his reply brief, and without further detail, his generalized objection does not suffice to allege prosecutorial misconduct.

Regarding the claimed *Batson* violation during jury selection, Petitioner recites general *Batson* legal principles and declares that prosecutors "used peremptory challenges against African-Americans" such that "the Government chose [an all-white] Jury that was not [a] representative cross-section of the community." (Pet'r Mot. at 7; Pet'r Mem. at 28; Pet'r Reply, Ex. A at 5.) Petitioner provides no record against which his generalized claims of a discriminatory motive by the prosecution can be assessed.

Finally, Petitioner alleges *Brady* violations related to bank guarantees. (Pet'r Mot. at 7-9; Pet'r Mem. at 30-37.) "*Brady* is designed to assure that the defendant will not be denied access to exculpatory evidence only known to the Government." *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988). Petitioner also takes issue with the fact that the government did not offer certain evidence, including facts about his past business dealings and recordings of his conversation. The final piece of evidence that Petitioner alleges was withheld, the lawsuits against co-defendant Hurt, were public knowledge, and thus not known only to the Government.

The Government maintains that for all of the alleged violations, Petitioner either had possession of the relevant evidence or had sufficient knowledge to take advantage of it, and that Petitioner's counsel had a full copy of Petitioner's laptop containing the documents related to bank guarantees claimed to have been improperly withheld. (Resp't Resp. at 53.) Indeed, by its nature, Petitioner would have been directly involved in the creation of this evidence and so was aware of its existence and could have offered it at trial himself.

---

a missing witness charge based on the Government's failure to call Professor Byrne, particularly in light of the "considerable discretion" given to district courts in determining whether to give a missing witness charge. *See United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004).

Petitioner implicitly concedes he lacks a basis for alleging that the Government failed to turn over *Brady* materials to his trial counsel. In response to the Government saying it turned over *Brady* materials, Petitioner states that "if the Government complied with its[] *Brady* obligations, then the Government concedes that Trial Counsel was ineffective because [] the evidence stated herein [was] material to Petitioner['s] defense, yet Trial Counsel permitted the Government to perpetuate fallacious assertions." (Pet'r Reply at 10.) In other words, Petitioner concedes he has no direct knowledge of the status of what was produced to his trial counsel, and therefore no basis to assert that that any *Brady* materials or any other evidence were actually withheld by the Government. He appears to merely be making unfounded accusations to that effect, on the reasoning that if his trial counsel did not offer certain evidence at trial, the Government must not have produced it.

### C. Abuse of Discretion by the Court

Petitioner claims that the Court abused its discretion during trial in four ways (Pet'r Mot. at 10-11):

> 1. Permitting questioning related to Petitioner's prior conviction.
>
> 2. Erroneously instructing the jury.
>
> 3. Allowing prosecution lay witnesses to testify to the authenticity of documents.
>
> 4. Improperly ordering restitution.

Respondent argues that Petitioner is procedurally defaulted on these claims (Resp't Resp. at 57) and, as discussed above, Petitioner has not shown cause to overcome this procedural default. Moreover, the first claim, improper questioning related to prior convictions, has already been unsuccessfully raised before the Second Circuit. *Jackson*, 792 Fed. App'x at 853-854.

### IV. Motion for Preservation of Evidence

Petitioner moves [Doc. # 6] for this Court to issue an order directing the Government to preserve the following evidence:

- Rough Notes of Government Agents.
- Grand Jury Transcripts (Jencks Material).
- Items of Evidence.
- Witness Statements - Non-Testifying and Testifying.
- Witness Agreements - Non-Testifying and Testifying.
- Petitioner's Laptop Computer.

The Government responds that "the Government has maintained, and continues to maintain the relevant case files, that contain a copy of the relevant discovery materials, the trial evidence, and specifically the Government has maintained the Defendant's Samsung laptop physically and securely located in the New Haven evidence room, as verified by FBI New Haven Division's Evidence Technician." (Resp't Resp. to Mot. to Preserve [Doc. # 7] at 1.) The Government also represents that trial defense counsel "has confirmed that his law office server contains the relevant discovery and he has maintained a copy of the defendant's hard drive of his Samsung laptop computer as was produced to him in 2015." (*Id.*) The Government maintains that it has complied with its duty "to preserve evidence . . . that might be expected to play a significant role in Jackson's defense." (*Id.* 2.) Based on the Government's representations that it "intends to maintain what evidence it currently has" (*id.* at 5.), there is no need for any order for the preservation of evidence.

### V.     Motion to Compel

Petitioner submits an "Emergency Motion to Compel the Government to Cease and Desist from Releasing Evidence to a Non-Affiliated Third Party" [Doc. # 14]. The gravamen of this motion seems to be Petitioner's discontent with a letter sent by the Government to the Warden of FMC Lexington, where Petitioner is incarcerated, discussing the nature of Petitioner's case and requesting reconsideration of the Warden's decision to release

16

Petitioner to home confinement pursuant to the CARES Act. The Warden thereafter cancelled Petitioner's CARES ACT home confinement placement. The Government claims its letter merely provided the Warden with information about Petitioner that was available either on the public docket or in his Presentence Report, which would be in Petitioner's institutional file. (Resp't Resp. to Mot. to Compel [16], citing Letter to Warden as Ex. A [16-1].) Petitioner does not show a basis for any order compelling the Government to "cease and desist" from corresponding with the Warden, as he has not shown the Government provided the Warden with any communications that were not either on the public docket or already in the Warden's possession.

### VI. Conclusion

For the foregoing reasons, Petitioner's § 2255 Petition [Doc. # 1], Motion for Preservation of Evidence [Doc. # 6] and Motion to Compel [Doc. # 14] are DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of September, 2023